1    **WO**

5                    IN THE UNITED STATES DISTRICT COURT

6                          FOR THE DISTRICT OF ARIZONA

8    ANDRES EFREN ESTRADA,                )
                                          )
9                      Petitioner,        )
                                          )        No. CIV 08-371-TUC-CKJ
10   vs.                                  )
                                          )        **ORDER**
11   CHARLES L. RYAN, et al.,             )
                                          )
12                     Respondents.       )
     _____     )

        Pending before the Court is the Petition under 28 U.S.C. § 2254 for a Writ of Habeas

Corpus by a Person in State Custody filed by Andres Efren Estrada ("Estrada").

Respondents have filed an Answer and Estrada has filed a Reply.


I. *Factual and Procedural Background*

        The Court of Appeals stated the factual history as follows:

        The evidence at trial, viewed in the light most favorable to sustaining the verdicts, *see*
        *State v. Greene*, 192 Ariz. 431, ¶ 12, 967 P.2d 106, 111 (1998), was as follows.
        Officer Bryan Brown of the Tohono O'Odham Police Department stopped the car
        Estrada had been driving after he saw it "drift over to the right-hand side of the
        roadway" and go over the line in the road that separates the eastbound lanes of
        Valencia Road.  Brown approached Estrada and "smelled . . . a strong odor of
        intoxicants."   He also noted Estrada "had red, watery eyes, and . . . had been
        perspiring."  Brown asked Estrada if he had had anything to drink, and Estrada
        responded that he had had "two beers."  Brown asked Estrada if he was willing to
        perform field sobriety tests, and Estrada said he was.  Brown noted that, as Estrada
        walked to the rear of his car, his "walking was slow and kind of uneven," which
        Estrada suggested in defending the case was the result of his being an arm amputee.
        Estrada could not perform the first test, the walk-and-turn test, because he could not
        balance; he could not, as Brown testified, "hold the starting position."  Estrada told
        Brown he could not do what was being requested.  He tried the second test, the one-
        legged stand, and could not do it either.  Brown then arrested Estrada and took him
        to a police substation for a test to determine his AC.  When they arrived, Estrada
        apparently fell on the steps and Brown assisted him into the substation.

Brown read Estrada the *Miranda*[1] warning, thereby informing Estrada of his constitutional rights. Defense counsel objected when the prosecutor asked Brown whether Estrada had understood his rights, and Brown began to respond that Estrada had repeatedly said he did not understand them. In an ensuing bench conference, defense counsel objected, stating, "I'm a little concerned. I don't know where the State is going with this." When the court asked the prosecutor what she was trying to establish, she responded, "He becomes argumentative and profane. He's playing around and even though the officer asks him, "do you want to talk to an attorney,' he explained his rights, he said no. He never invoke[d] his rights. So I didn't think it was a problem." The court agreed but asked the prosecutor if she was certain Estrada had not invoked his rights. The prosecutor responded, "He'll testify that Mr. Estrada never – he kept saying he didn't understand, refused to phone an attorney. So [Brown] did not ask him any questions." That is precisely what occurred, although defense counsel suggested that Estrada had invoked his rights.

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966).

The court then stated, "If it goes any further, it might be [a problem]. I think right now we're on safe grounds." The court cautioned the prosecutor to "be careful," allowing her to "gently lead the witness through this area and then ask nonleading questions after you get through it." Thereafter, the prosecutor asked Brown about Estrada's professed lack of understanding, which Brown reiterated. Brown also testified that he had asked Estrada if he wanted a lawyer to explain his rights to him and if he would like to call a lawyer, but said Estrada had "declined at that time." Brown then read Estrada Arizona's implied consent law and asked him if he would submit to a breath or blood test to determine his AC, to which Estrada responded, "'[F]uck, no.'" Brown obtained a warrant, and a sample of Estrada's blood was drawn by a phlebotomist.

Answer, Ex. L., pp. 2-4.

On February 7, 2006, a jury returned guilty verdicts on the charges of aggravated driving under the influence while license is suspended, revoked or in violation of a restriction and aggravated driving with an alcohol concentration of 0.08 or more while license is suspended, revoked or in violation of restriction. On February 17, 2006, following a bench trial, the trial court found Estrada had been previously convicted of the crimes of aggravated driving while under the influence of intoxicating liquor while license is suspended, revoked or refused in violation of a restriction in Pima Count cases CR-45957 and CR-66679.

On March 8, 2006, the court sentenced Estrada to mitigated concurrent terms of 8 years imprisonment on both charges. Estrada's sentences were enhanced based on his prior convictions.

Estrada filed a Notice of Appeal and, on July 26, 2006, Estrada filed his opening brief. Estrada argued that (1) the prosecutor improperly commented on Estrada's invocation of his

right to remain silent, in violation of due process, when the prosecutor elicited testimony from the arresting officer that Estrada said he did not understand his *Miranda* rights, although the officer believed Estrada did understand his rights, (2) the *Portillo* reasonable doubt instruction given in Estrada's case relieved the State of its constitutional burden of proof, resulting in structural error, and (3) the court's finding of prior convictions violated Estrada's right to a jury trial. On December 15, 2006, the Court of Appeals of Arizona affirmed Estrada's convictions and sentences. The Court of Appeals issued its mandate on January 23, 2007.

Estrada filed a Notice of Post-Conviction Relief and, on April 2, 2007, Estrada filed a Petition for Post-Conviction Relief. Estrada argued that counsel was ineffective for failing to file a motion to suppress based on an improper blood draw. On July 16, 2007, the post-conviction court conducted an evidentiary hearing regarding the Petition for Post-Conviction Relief. The court determined:

> THE COURT FINDS that, but for the Petitioner's conduct in moving his arm when Department of Public Safety Officer Montgomery, the phlebotomist, attempted to extract his blood with a needle pursuant to a search warrant, the Petitioner would not have been subjected to the pain, discomfort and bruising that he has complained of.
>
> Based on the record, it is clear to the Court that the manner in which Officer Montgomery conducted the court-ordered extraction of the Petitioner's blood did not contravene established phlebotomy protocols, did not subject the Petitioner to an unreasonable risk of harm, and therefore, did not violate the Fourth Amendment. Because it was reasonable for defense counsel to conclude that the filing of a motion to suppress evidence would not have resulted in the suppression of the results of the blood testing, defense counsel's decision not to file a motion to suppress the results of the blood test did not fall below an objective standard of reasonably competent representation and did not prejudice the Petitioner.

Answer, Ex. Q, p. 2. The court denied the Petition for Post-Conviction Relief. Estrada filed a *pro se* petition for review with the Court of Appeals. On October 12, 2007, the Court of Appeals ordered Estrada to submit a copy of the ruling on the Petition for Post-Conviction Relief on or before November 13, 2007. Estrada was advised that, if the ruling was not filed by that date, the petition for review would be dismissed. On November 19, 2007, the Court ordered that, because there had been no compliance with the court's October 12, 2007, order, the petition for review was dismissed. The Court of Appeals issued its mandate on February

8, 2008.

On November 5, 2007, Estrada filed a second Notice of Post-Conviction Relief. On February 9, 2009, Estrada filed a second Petition for Post-Conviction Relief. Estrada argued that he had received ineffective assistance of post-conviction counsel and that, pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), the trial court had erred in sentencing him.[1] On June 15, 2009, the post-conviction court summarily dismissed the second Petition for Post-Conviction Relief.

On June 26, 2008, Estrada filed the instant Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody. On December 22, 2008, Estrada filed an Amended Petition for Writ of Habeas Corpus. Estrada asserts that (1) the prosecutor commented on Estrada's right to remain silent in violation fo the Fourteenth Amendment by eliciting testimony that Estrada did not understand his rights, (2) the trial court violated Estrada's Fourteenth Amendment due process rights when it gave the *Portillo* reasonable doubt instruction, (3) the trial court violated Estrada's Sixth Amendment right to a jury determination of his prior convictions and there was insufficient evidence to establish the prior convictions, and (4) trial, appellate, and post-conviction counsel provided ineffective assistance by not presenting witnesses to testify that the blood draw resulted in damage to Estrada's arm. Respondents have filed an Answer and Estrada has filed a Reply. On May 17, 2010, Respondents supplemented the Answer as directed by the Court.

II. *Standard of Review*

Federal courts may consider a state prisoner's petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See Reed v. Farley*, 512 U.S. 339, 347, 114 S.Ct. 2291, 2296, 129 L.Ed.2d 271 (1994). Indeed, a habeas corpus petition by a person in state custody:

---

[1]Respondents assert that Estrada also argued that appellate counsel was ineffective. However, that claim was not included in Estrada's second Petition for Post-Conviction Relief. Answer, Ex. W.

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). General improprieties occurring in state proceedings are cognizable only if they resulted in fundamental unfairness and consequently violated a petitioner's Fourteenth Amendment right to due process. *See generally, Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

This Court must review claims consistent with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). "The Act limits the ability of federal courts to reexamine questions of law and mixed questions of law and fact." *Jeffries v. Wood*, 114 F.3d 1484, 1498 (9th Cir. 1997). This Court may only overturn a state court finding if a petitioner shows by clear and convincing evidence that the finding was erroneous. *See* 28 U.S.C. § 2254(e)(1). An "unreasonable application of clearly established law" exists if the state court identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the case. *See Taylor*.

III. *Statute of Limitations*

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must generally file a petition for writ of habeas corpus within one year from the date upon which his judgment became final or the expiration of time for seeking such review. *See* 28 U.S.C. § 2244(d)(1)(A). Estrada's petition was timely filed.

IV. *Exhaustion of State Remedies*

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, i.e., have presented in state court every claim raised in the federal habeas petition. *See Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d

- 5 -

640 (1991); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) (a state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). Exhaustion of state remedies is required in order to give the "State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 1349, 158 L.Ed.2d 64 (2004), *internal quotation marks and citations omitted.*

In Arizona, exhaustion is satisfied if a claim is presented to the Arizona Court of Appeals. A discretionary petition for review to the Supreme Court of Arizona is not necessary for purposes of federal exhaustion.[2] *Swoopes*, 196 F.3d at 1010; *State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989) (in non-capital cases, state remedies are exhausted by review by the court of appeals). A claim is "fairly presented" if the petitioner has described the operative facts and legal theories on which his claim is based. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). In state court, the petitioner must describe not only the operative facts but also the asserted constitutional principle. The United States Supreme Court has stated:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law

[2]Respondents assert that, pursuant to *Baldwin*, Estrada has not exhausted his first three claims because he did not seek review to the Supreme Court of Arizona. However, in light of the Ninth Circuit's specific consideration in *Swoopes* of *Sandon*, Arizona's procedurals laws, and the Supreme Court's response to certified questions from the Ninth Circuit in *Moreno v. Gonzalez*, 192 Ariz. 131, 962 P.2d 205 (1998), this Court finds a discretionary petition for review to the Supreme Court is not necessary for purposes of federal exhaustion. *See also Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005).

guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). A petitioner does not ordinarily "fairly present" a federal claim to a state court if that court must read beyond a petition, brief, or similar papers to find material that will alert it to the presence of a federal claim. *See e.g., Baldwin*, 541 U.S. at 33 (rejecting contention that petition fairly presented federal ineffective assistance of counsel claim because "ineffective" is a term of art in Oregon that refers only to federal law claims since petitioner failed to demonstrate that state law uses "ineffective assistance" as referring only to federal law rather than a similar state law claim); *Harless*, 459 U.S. at 6 (holding that mere presentation of facts necessary to support a federal claim, or presentation of state claim similar to federal claim, is insufficient; petitioner must "fairly present" the "substance" of the federal claim); *Hivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds), *cert. denied*, 529 U.S. 1009 (2000); *Gatlin v. Madding*, 189 F.3d 882 (9th Cir. 1999) (holding that petitioner failed to "fairly present" federal claim to state courts where he failed to identify the federal legal basis for his claim), *cert. denied*, 52 U.S. 1087.

## V. *Procedural Default*

The Ninth Circuit Court of Appeals has explained the distinction between exhaustion and procedural default as follows:

> The exhaustion requirement is distinct from the procedural default rule. The exhaustion doctrine applies when the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be available to the petitioner under state law. In contrast, the procedural default rule barring consideration of a federal claim applies only when a state court has been presented with the federal claim, but declined to reach the issue for procedural reasons, or if it is clear that the state court would hold the claim procedurally barred. Thus, in some circumstances, a petitioner's failure to exhaust a federal claim in state court may *cause* a procedural default. A habeas petitioner who has defaulted his federal claims in state court meets the *technical* requirements for exhaustion; there are no state remedies any longer 'available' to him. A federal claim that is defaulted in state court pursuant to an adequate and independent procedural bar may not be considered in federal court unless the petitioner demonstrates cause and prejudice for the default, or shows that a fundamental miscarriage of justice would result if the

federal court refused to consider the claim.

*Cassett v. Stewart*, 406 F.3d 614, 621 n. 5 (9th Cir. 2005), *internal quotation marks and citations omitted*. In other words, a habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n. 1. This is often referred to as "technical" exhaustion because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy. *See id*. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no remedies any longer 'available' to him."). If a claim is procedurally defaulted, it may not be considered by a federal court unless the petitioner demonstrates cause and prejudice to excuse the default in state court, or that a fundamental miscarriage of justice would result. *Id*. at 753; *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). If a claim has never been fairly presented to the state court, a federal habeas court may determine whether state remedies remain unavailable. *See Harris v. Reed*, 489 U.S. 255, 269-70, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Teague v. Lane*, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

VI. *Procedural Analysis of Estrada's Claims*

A. *Exhausted Claims*

As to Estrada's claims that (1) the prosecutor commented on Estrada's right to remain silent in violation of the Fourteenth Amendment, (2) the trial court violated Estrada's Fourteenth Amendment due process rights when it gave the *Portillo* reasonable doubt instruction, and (3) the trial court violated Estrada's Sixth Amendment right to a jury

determination of his prior convictions, Estrada raised these claims in the state courts – Estrada presented these claims to the Arizona Court of Appeals. The Court finds these claims have been exhausted. The Court will address these claims.

B. *Procedurally Defaulted Claims*

Included within Estrada's third claim and the Traverse is the assertion that insufficient evidence was presented to prove Estrada's prior convictions. Related to this, Estrada asserts in his Traverse that judicial notice is not an appropriate means of establishing the existence of a prior conviction. Estrada did not fairly present these claims to the state courts. *See* e.g., Answer, Ex. I and L. Although Estrada argued on appeal that the evidence left room for doubt, such argument was made in the context of asserting that the alleged violation of the right to a jury determination of the prior convictions was not harmless error. *See* Petition, pp. 33-37 of 39. Fair presentation to the state courts requires that the federal claim be the same as the one presented to the state court. *See, e.g., Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); *Beaty v. Stewart*, 303 F.3d 975, 989–90 (9th Cir. 2002) (claim not fairly presented where conflict–of–interest Sixth Amendment claim presented to Arizona state courts was based on a different conflict-of-interest claim than the one presented in the federal court); *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("This Circuit has held that the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *Beard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) ("The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition."); *Turner v. Fair*, 617 F.2d 7, 11 (1st Cir. 1980) (finding that the petitioner's argument amounted to a "new theory" to support an alleged Sixth Amendment violation and therefore was not exhausted). The Court finds these claims were not fairly presented to the state courts.

Estrada's fourth claim is that counsel were ineffective for failing to present witnesses

who would have testified that his arm had been damaged by the blood draw that had been authorized by court order; Estrada asserts the damage only could have been caused by an unlicensed phlebotomist. As to the ineffectiveness of trial and appellate counsel, Estrada did not present these claims to the post-conviction court. Rather, Estrada asserted in the first post-conviction proceeding that trial counsel was ineffective for failing to file a motion to suppress the results of the blood draw. Indeed, the Ninth Circuit Court of Appeals has determined that new bases for ineffective assistance of counsel claims that were not raised in the state proceedings are not exhausted. *Moormann v. Schriro*, 426 F.3d 1044, 1056 (9th Cir. 2005); *see also Beaty*, 303 F.3d at 989-90 (conflict of interest Sixth Amendment claim was not fairly presented to Arizona state court where federal court was presented with a different conflict than the one raised in state court). Additionally, these claims were not presented to the appellate court.

Estrada also claims that post-conviction counsel was ineffective for failing to present witnesses who would have testified that his arm had been damaged by the blood draw that had been authorized by court order. Estrada did not present this claim until his second post-conviction proceeding. As with his claims that trial and appellate counsel were ineffective, Estrada did not present these claims to Arizona Court of Appeals.

In other words, Estrata has not invoked one complete round of Arizona's appellate review process as to these claims. *Boerckel*, 526 U.S. at 845 (a state prisoner in a federal habeas action must exhaust his claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition). The Court must, therefore, determine whether these claims may still be presented to the state courts.

If Estrada now attempted to return to the Arizona court system to exhaust these claims, he would be procedurally barred from raising these claims. *See e.g., Harris v. Reed*, 489 U.S. 255, 269-70, 109 S.Ct. 1038, 1046-47, 103 L.Ed.2d 308 (1989) (O'Connor, J. concurring) (noting that if a claim was not fairly presented in the state court, then the federal court must determine whether there are state remedies available). Estrada's claims would

be procedurally defaulted as "waived at trial, on appeal, or in any previous collateral proceeding" pursuant to Rule 32.2(a)(3), Ariz.R.Crim.P.; *see also Ortiz v. Stewart*, 149 F.3d 923, 931-32 (9th Cir. 1998) (rejecting argument that Arizona courts did not "strictly and regularly" follow Rule 32 procedural rules).

The Court notes that Estrada had asserted, in his second Petition for Post-Conviction Relief, that he was arguing an ineffective assistance of counsel claim pursuant to *State v. Bennett*, 213 Ariz. 562, 146 P.3d 63 (2006). In *Bennett*, the Court determined that an ineffective assistance of appellate counsel claim could not realistically have been presented in the first post-conviction proceeding because post-conviction counsel was the appellate counsel. In that situation, Ariz.R.Crim.P. 32.2(a)(3) did not preclude the ineffective assistance of appellate counsel claim in the second post-conviction proceeding. In this case, however, Estrada's appellate counsel was not his first post-conviction counsel. *See* Answer, Ex. I (M. Edith Cunningham as appellate counsel) and Ex. O (Anne Elsberry as post-conviction counsel). The general rule that, "when 'ineffective assistance of counsel claims are raised, or could have been raised, *in a Rule 32 post-conviction relief proceeding*, subsequent claims of ineffective assistance will be deemed waived and precluded[,]'" *Bennett*, 213 Ariz. at 566, *quoting State v. Spreitz*, 202 Ariz. 1, 2, 39 P.3d 525, 526 (2002), is, therefore, applicable in this case. By not adequately presenting these issues to the state courts in his two post-conviction proceedings, Estrada has waived these issues.

Moreover, under Arizona law, a petitioner who was convicted at trial must file a Notice of Post-Conviction Relief within 90 days of the entry of judgment and sentence or within 30 days of the order and mandate affirming the judgment and sentence on direct appeal, whichever is later. Ariz.R.Crim.P. 32.4(a). Estrada has already completed a Rule 32 proceeding.[3] If Estrada were to fairly present these issues in a subsequent petition for post-conviction relief, such presentation would be untimely. Moreover, these claims do not qualify for any of the timeliness exceptions:

---

[3]Indeed, Estrada has completed two post-conviction proceedings.

<table>
<tr><td>(d)</td><td>The person is being held in custody after the sentence imposed has expired;</td></tr>
<tr><td>(e)</td><td>Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence . . . ;</td></tr>
<tr><td>(f)</td><td>The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or</td></tr>
<tr><td>(g)</td><td>There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or</td></tr>
<tr><td>(h)</td><td>The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.</td></tr>
</table>

Rules 32.1 and 32.4(a), Ariz.R.Crim.P. Such a new petition, therefore, would be subject to summary dismissal. *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App. 1999); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135, 962 P.2d 205, 209 (1998) (timeliness is a separate inquiry from preclusion).

Estrada's claims that trial, appellate, and Rule 32 counsel were ineffective for failing to present witnesses, therefore, are technically exhausted and, therefore, procedurally defaulted.[4] *Park v. California*, 202 F.3d 1146, 1150-51 (9th Cir. 2000) (federal habeas review is precluded where prisoner has not raised his claim in the state courts and the time for doing so has expired).

C. *Cause and Prejudice Analysis*

As for Estrada's procedurally defaulted claims, federal habeas review is barred unless Estrada demonstrates "cause for the default and prejudice attributable thereto, or

_____

[4]Because these claims are procedurally defaulted pursuant to Rule 32.4(a), Ariz.R.Crim.P., this Court need not determine whether the claims are of "sufficient constitutional magnitude" to require a knowing, voluntary, and intelligent waiver such that the claim is precluded pursuant to *Cassett*. Moreover, the procedural timeliness bar of Rule 32.4(a), Ariz.R.Crim.P., is clear, consistently applied, and well established. *Powell v. Lambert*, 357 F.3d 871 (9th Cir. 2004); *see e.g., State v. Rosario*, 195 Ariz. 264, 987 P.2d 226 (App. 1999) (where petition did not raise claims pursuant to Rule 32.1(d) through (g), the petition could be summarily dismissed if untimely); *Moreno v. Gonzales*, 192 Ariz. 131, 962 P.2d 205 (1998) (timeliness provision of Rule 32.4(a) became effective September 20, 1992); *State v. Jones*, 182 Ariz. 432, 897 P.2d 734 (App. 1995) (Rule 32.4(a) was amended to "address potential abuse by defendants caused by the old rule's unlimited filing periods").

demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749-750 (citations omitted; internal quotation marks omitted); *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998), *citing Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992) (generally, if a petitioner "has failed to develop material facts in state court proceedings, he or she must demonstrate adequate cause for his or her failure and actual prejudice resulting from that failure). Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991) (citation omitted); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court). Prejudice need not be addressed if a petitioner fails to show cause. *Murray.* To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence[.]" *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002), *citations omitted.* "Actual innocence can be shown when a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Sistrunk*, 292 F.3d at 673, *quoting Schlup v. Delo*, 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

Estrada failed to invoke one full round of Arizona's established review process. *See Swoopes*, 196 F.3d at 1010. Estrada asserts that he had "no legal representation, no legal ability." Amended Petition, p. 9. However, a petitioner's *pro se* status and lack of legal proficiency do not establish "cause" for the petitioner's failure to properly present a federal claim to a state court. *See, e.g., Kibler v. Walters*, 220 F.3d 1151, 1154 (9th Cir. 2000); *Steele v. Young*, 11 F.3d 1518, 1522 (10th Cir. 1993); *Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992).

Additionally, Estrada asserts that the ineffective assistance of trial and appellate counsel, who failed to present witnesses who would have testified that his arm had been

- 13 -

damaged by the blood draw that had been authorized by court order constitutes cause to excuse his default. However, Estrada does not present any reason why he did not present this assertion in either his first or second Petitions for Post-Conviction Relief . . . and complete appellate review of any unfavorable ruling. The Court finds that Estrada has failed to show cause to excuse his failure to comply with Arizona's procedural rules.

Moreover, although counsel's ineffectiveness may constitute cause "if it amounts to an 'independent constitutional violation[,] *see e.g., Bonin v. Calderson*, 77 F.3d 1155, 1158 (9th Cir. 1996), *citation omitted*, the alleged ineffectiveness in this case is not an independent violation. During the Rule 32 evidentiary hearing, the post-conviction court stated:

> Based on the evidence and the exhibits presented at this hearing, the Court finds that but for the Petitioner's conduct in moving his arm when the Department of Public Safety Officer Montgomery, the phlebotomist, attempted to extract his blood with a needle pursuant to a search warrant, he would not have been subjected to the pain, discomfort and bruising that he has complained of.
>
> Based on the record, it is clear to the Court that the manner in which Officer Montgomery, the phlebotomist, conducted the Court-ordered extraction of the Petitioner's blood did not contravene established phlebotomy protocols, did not subject the Petitioner to an unreasonable risk of harm, and therefore, did not violate the Fourth Amendment.
>
> Because it was reasonable for defense counsel to conclude that the filing of a motion to suppress evidence would not have resulted in the suppression of the results of the blood testing, defense counsel's decision not to file a motion to suppress the results of the blood test did not fall below an objective standard of reasonableness and did not prejudice the Petitioner.

Ex. AA, pp. 47-48. These state court findings are entitled to a presumption of correctness and Estrada has failed to show by clear and convincing evidence that the findings are erroneous. *See Wainwright v. Witt*, 469 U.S. 412, 426, 105 S.Ct. 844, 853, 83 L.Ed.2d 841 (1985), and 28 U.S.C. § 2254(e)(1).

Indeed, the transcript of the evidentiary hearing, *see* Ex. AA, indicates that the post-conviction court discussed with counsel the contradictory testimony between Estrada and the phlebotomist as to whether Estrada moved his arm during the blood draw and the number of

attempts needed to complete the blood draw.[5]  The post-conviction court further discussed the speculative nature of whether adequate cleaning procedures had been utilized during the blood draw, including the fact that there was no evidence that Estrada suffered an infection. In light of the determination that blood was not drawn in contravention of the established phlebotomy protocols, this Court finds Estrada was not prejudiced by this alleged deficiency. *Strickland v. Washington*, 466 U.S. 668, 686-90, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674 (1984); *Mancuso v. Olivarez*, 292 F.3d 939, 954 (9th Cir. 2002) (strong presumption counsel's conduct falls within wide range of reasonable professional assistance; counsel's decisions are not to be second-guessed to reconstruct the circumstances of counsel's challenged conduct); *Correll v. Stewart*, 137 F.3d 1404, 1411 (9th Cir. 1998).  Counsel's alleged ineffectiveness, therefore, cannot constitute cause in this case.

Additionally, Estrada has included a December 17, 2008, affidavit in which he asserts that his mother was unable to obtain a copy of the appellate memorandum decision, that he did not know the result of the decision, did not know the date of the decision, and did not have a copy of the decision.  Petition, Ex. A.  The appellate court only issued one memorandum decision in this case.  Because this Court has determined that review to the Arizona Supreme Court is not necessary for exhaustion, this affidavit does not present cause to excuse any default.  Moreover, because the affidavit does not include details, it is difficult for the Court to determine if Estrada is actually referring to an order of the appellate court. Nonetheless, if Estrada is seeking to assert that he was not adequately advised that he was required to submit a copy of the ruling on the Petition for Post-Conviction Relief, Estrada has failed to present any reason for not raising this issue with either the appellate court or the second post-conviction court.  The Court finds that Estrada has failed to show cause to excuse his failure to comply with Arizona's procedural rules.

---

[5]Although Estrada asserts counsel were ineffective for failing to present witnesses who would have testified that his arm had been damaged by the blood draw, the post-conviction court correctly pointed out that there was a factual dispute as to whether the difficulties in obtaining the blood were the result of Estrada moving his arm.

- 15 -

Furthermore, the Court finds Estrada has also failed to show prejudice – any constitutional violation so basic as to infect Estrada's entire trial with error, *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), or a fundamental miscarriage of justice that no reasonable juror could find him guilty, *Schlup*, 513 U.S. at 327. Estrada's procedural default cannot be excused.

## VII. *Alleged Comment on Estrada's Right to Remain Silent*

Estrada asserts that the prosecutor commented on Estrada's right to remain silent in violation of the Fourteenth Amendment. As to this issue, the Court of Appeals stated:

> On appeal, Estrada challenges the trial court's ruling on Brown's testimony, contending that testimony was an improper comment on his right to remain silent and suggesting Estrada's Fifth Amendment privilege includes the right to prohibit commentary on his failure to cooperate with police. Estrada relies, inter alia, on *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S.Ct. 2240, 2245 (1976), which recognized that the right to remain silent includes a defendant's right not to be asked about his or her exercise of that right. We question whether Estrada's objection to Brown's testimony at trial was specific enough or otherwise sufficient to preserve the issue now raised. But even assuming it was, we find no clear and manifest error that would warrant reversal here. *See State v. Prince*, 160 Ariz. 268, 272, 772 P.3d 1121, 1125 (1989).

> If a person invokes his or her rights, the person must clearly articulate that invocation in such a manner that a reasonable police officer in the circumstances would understand the person had invoked his or her rights. *See Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 2355 (1994) (suspect must clearly articulate "desire to have counsel present" and if "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," then questioning need not cease); *see also State v. Newell*, 212 Ariz. 389, ¶ 25, 132 P.3d 833, 841 (2006) (same). Estrada argues that, "[b]y telling the officer he did not understand his rights, he clearly conveyed that he did not want to answer questions." We disagree.

> The record does not support the conclusion that Estrada invoked his rights. Therefore, Brown's testimony neither commented on any alleged invocation nor related to statements, whether about Estrada's alleged invocation of rights or anything else. Rather, the testimony related to Estrada's protestations of a lack of understanding that preceded an outright refusal of counsel, not an unambiguous, unequivocal invocation of his rights. *See State v. Strayhand*, 184 Ariz. 571, 590, 911 P.2d 577, 584 (App. 1995) (defendant's invocation of right to remain silent must be unambiguous). We agree with the state that nothing in *Doyle* suggests the Supreme Court intended its holding to apply to "a mere refusal to cooperate with the police" when the person has not invoked his or her rights.

> Still, Estrada contends "a stated lack of understanding [of one's *Miranda* rights] is tantamount to an invocation of silence." Even assuming that is so, Brown's testimony "did not focus the jury's attention on [Estrada's] alleged exercise of his right to

remain silent." *State v. Flores*, 160 Ariz. 235, 237, 772 P.2d 589, 591 (App. 1989). Answer, Ex. L,, pp. 4-5.

The Ninth Circuit has stated:

> [T]he due process violations found in these decisions are a result of the fundamental unfairness of the prosecution's use of post- Miranda silence to infer the defendant's guilt and thereby aid in persuading a jury to convict. Such use amounts to "penalizing" the defendant for invocation of their rights. *Compare Doyle*, 426 U.S. at 617-18, 96 S.Ct. 2240, *with Wainwright*, 474 U.S. at 295, 106 S.Ct. 634. After all, that the defendant will not be penalized is implicit in the opening line of the Miranda warnings: "You have the right to remain silent...." *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It would not be much of a "right" if its use penalizes the user.

*Huu Thanh Nguyen v. Garcia*, 477 F.3d 716, 723 (9th Cir. 2007); *see also Berghuis v. Thompkins*, 130 S.Ct. 2250, 2263 (2010) ("If [defendant] wanted to remain silent, he could have said nothing in response to [the officer's] questions, or he could have unambiguously invoked his *Miranda* rights and ended the interrogation.") In this case, there was not an unequivocal invocation of his right to remain silent. Rather, Estrada specifically declined to call an attorney and testimony to that effect was presented to the jury. Estrada cannot have been *penalized for invoking his rights* by testimony that established Estrada did not invoke his rights. *See e.g., United States v. Agee*, 597 F.2d 350 (3rd Cir.) (en banc), *cert. denied*, 442 U.S. 944 (1979) (defendant's attempted deception, not his purported "silence," could be commented upon by prosecutor).

Estrada's reliance on *United States v. Elkins*, 774 F.2d 530, 537 (1st Cir. 1985), and similar cases is misplaced. For example, the officer in *Elkins* testified that the defendant did not seem to be surprised to have been arrested. The officer in this case, however, testified that Estrada declined to contact an attorney. As previously stated, such testimony did not penalize Estrada for invoking his rights because he did not invoke his rights. Contrary to Estada's assertion, it is not simply a matter of the state court's incorrectly considering the error to be harmless error – rather, there was no error. Moreover, although Estrada asserts that non-cooperation in response to an advisement of *Miranda* rights or police questioning constitutes an invocation of rights, the facts of this case is not that Estrada simply did not cooperate with the officer. Rather, Estrada stated that he did not understand his rights and

- 17 -

specifically stated that he did not wish to contact an attorney.  There is simply no federal authority that such a situation constitutes an invocation of *Miranda* rights.  *See e.g., Thompkins*, 130 S.Ct. at  2260, *internal citations and quotations omitted* ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police.  Had he made either of these simple unambiguous statements, he would have invoked his right to cut off questioning.  Here he did neither, so he did not invoke his right to remain silent."); *Davis v. United States*, 512 U.S. 452, 459 (1994) (suspect must clearly articulate "desire to have counsel present" and if "a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," then questioning need not cease).

Given the reasons the Arizona courts stated for determining that Estrada's right to remain silent was not improperly commented upon, this Court does not find that the state courts' rulings to be objectively unreasonable.  *See* 28 U.S.C. § 2254(d) (habeas relief not available with respect to a claim unless the state courts' adjudication of it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"); *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002) (habeas court is not to make its own independent judgment, but is to determine whether state court applied federal authority in an objectively unreasonable manner).

VIII.  *Portillo Reasonable Doubt Instruction*

Estrada argues that the trial court violated Estrada's Fourteenth Amendment due process rights when it gave a reasonable doubt instruction pursuant to *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995).  The trial court instructed the jury as follows:

> The State has the burden of proving the Defendant guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not or its truth is highly probable.  In criminal cases such as this, the State's proof must be more powerful than that.  It must be beyond a reasonable doubt.

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt.  There are very few things in this world that we know with absolute

certainty; and in criminal cases, the law does not require proof that overcomes every doubt.

If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he's not guilty, you must give him the benefit of the doubt and find him not guilty.

Answer, Ex. D, p. 142. The Arizona Court of Appeals determined that the instruction given was in accordance with the Arizona Supreme Court's directive in *Portillo* and that the Court of Appeals was "not at liberty to overrule or disregard supreme court precedent." Answer, Ex. L, p. 6.

As Respondents point out, the *Portillo* instruction is nearly a verbatim copy of the pattern jury instruction on reasonable doubt adopted by the Federal Judicial Center ("FJC"). Indeed, the Ninth Circuit has upheld similar language. *See United States v. Artero*, 121 F.3d 1256, 1257-59 (9th Cir. 1997) (reasonable doubt instruction including "firmly convinced" and "real possibility" language approved). Moreover, "the *Portillo* reasonable doubt instruction given by the trial court does not violate any clearly established Supreme Court authority." *Lopez v. Ryan*, No. CV-08-1469-PHX-PGR (MHB), 2009 WL 3294876 * 1 (D.Ariz. 2009); *see also Victor v. Nebraska*, 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring) (citing approvingly FJC, Pattern Criminal Jury Instructions, at 17–18 (instruction 21), utilizing a "firmly convinced" and "real possibility" formulation). Estrada's reliance on *State v. Perez*, 90 Hawaii 113, 976 P.2d 427 (App. 1998), *reversed in part*, in light of the federal authority, is not well-taken. This Court does not find that the state courts' rulings to be objectively unreasonable.

IX. *Right to Jury on Prior Convictions*

Estrada asserts that the trial court violated Estrada's Sixth Amendment right to a jury trial by the court's finding of Estrada's prior convictions, As to this issue, the Court of Appeals stated:

We also reject Estrada's claim that he was entitled to have a jury determine the state's sentence-enhancing allegation that he had prior felony convictions. Both *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63 (2000), and *Blakely v.*

- 19 -

*Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 2536 (2004), except the fact of prior felony convictions from a defendant's jury trial right. *See State v. Keith*, 211 Ariz. 436, ¶ 3, 122 P.3d 229, 230 (App. 2005).

Answer, Ex. L, p. 6.

Given the reasons the Arizona courts stated for determining that Estrada was not entitled to have his prior convictions determined by a jury, this Court does not find that the state courts' rulings to be objectively unreasonable. *See e.g., United States v. Brown*, 417 F.3d 1077, 1078-79 (9th Cir. 2005).

## X. *Certificate of Appealability ("COA")*

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1). Here, the Amended Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. This Court must determine, therefore, if a COA shall issue.

The standard for issuing a COA is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. In the certificate, the Court must indicate which specific issues satisfy the showing. *See* 28 U.S.C. § 2253(c)(3).

The Court determined that the state courts' rulings that (1) the prosecutor did not improperly comment on an alleged invocation of *Miranda* rights and (2) Estrada's Sixth Amendment right to a jury was not violated by the trial court's finding of Estrada's prior convictions were not objectively unreasonable. The Court further determined that the appellate court's implicit ruling that the *Portillo* instruction did not violate Estrada's Fourteenth Amendment due process rights was not objectively unreasonable. Estrada has not shown that reasonable jurists would find these determinations to be debatable or wrong.

This Court also determined that Estrada's claims that trial, appellate, and post-conviction counsel were ineffective were procedurally defaulted and that Estrada had not shown that cause and prejudice excused the default   The Court finds that jurists of reason would not find it debatable whether the Amended Petition stated a valid claim of the denial of a constitutional right and the Court finds that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

A COA shall not issue as to Estrada's claims.

Any further request for a COA must be addressed to the Court of Appeals. *See* Fed. R.App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, IT IS ORDERED:

1.     Estrada's Amended Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody is DISMISSED WITH PREJUDICE;

2.     The Clerk of the Court shall enter judgment and shall then close its file in this matter, and;.

3.     A Certificate of Appealability shall not issue in this case.

DATED this 23rd day of July, 2010.


_____
Cindy K. Jorgenson
United States District Judge